**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marilyn T. House,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of the Social Security Administration,<br><br>    Defendant. | No. CV 10-02065-PHX-NVW<br><br>**ORDER** |

    Plaintiff Marilyn House applied for disability insurance benefits and supplemental security income and was denied initially and upon reconsideration. She then received a hearing before Administrative Law Judge Joan G. Knight, who eventually determined that House is not disabled. On September 27, 2010, House appealed to this Court under 42 U.S.C. §§ 405(g).

    House died on December 16, 2010.[1] House has no "eligible spouse," as defined by Social Security regulations, so House's death extinguished her claim to retroactive supplemental security income. *See* 20 C.F.R. § 416.542(b). She does have surviving children, however, who may receive closed-period disability insurance benefits on her behalf. *See generally id*. §§ 404.350–404.368. Therefore, this appeal concerns whether

---

[1] The Court has not been informed of the cause of death.

House was disabled from the alleged onset in September 2002 through her death in December 2010.

For the reasons stated below, the Court will vacate and remand the ALJ's decision for further explanation of certain weight and credibility determinations.

## I.   BACKGROUND

House was 41 years old at the time she allegedly became disabled. Before that, she worked as a bartender/manager, medical assistant, and phlebotomist. She was let go from her last job — as a bartender/manager — in September 2002 because of troubles with her elbow. Since that time, she claims she has been unable to work due to various physical conditions, specifically: fibromyalgia, lumbar spine degenerative disc disease, osteoarthritis of the hands, and diverticulitis (inflammation of the intestinal tract).

The existence of these conditions is not at issue in this appeal. Rather, the only substantial question is whether these conditions manifested themselves severely enough to preclude all substantial gainful activity. The remainder of this section will therefore focus on evidence relevant to that issue.

### A.   Medical Opinions

#### 1.   Physician's Assistant Amanda Lewis

On February 8, 2007, PA Amanda Lewis — who works for House's treating rheumatologist, Dr. Michael Fairfax — completed a state disability form titled "Medical Source Statement of Ability To Do Work-Related Activities (Physical)." Lewis opined that House's maximum capacity to lift or carry is less than 10 pounds. Lewis also opined that House is limited to less than two hours of standing or walking in an eight hour day, and no more than four hours of sitting in an eight hour day. Lewis stated that House could "occasionally" stoop, kneel, reach, handle, finger, and feel, but House should "never" climb ramps, stairs, ladders, ropes, or scaffolds, nor should she be required to balance, crouch, or crawl. Lewis also concluded that House should not be required to work around heights, moving machinery, or temperature extremes. (Tr. 347–49.)

### 2. Dr. Ehreema Nadir

On June 25, 2007, a state agency examining physician, Dr. Ehreema Nadir, performed a physical examination on House. Dr. Nadir noted some symptoms consistent with fibromyalgia and gastrointestinal complaints, but concluded that House "should be able to find substantial work activity" "[i]f her fibromyalgia is controlled with medication." Dr. Nadir opined that House can lift 25 pounds occasionally and 15 pounds frequently, and that House could stand and walk for at least six hours in an eight hour day with frequent breaks. Dr. Nadir concluded that House has no restrictions on sitting or manipulating. (Tr. 507–11.)

### 3. Dr. Steven Otto

On August 3, 2007, a state agency consulting physician, Dr. Steven Otto, submitted a "Physical Residual Functional Capacity Assessment" based on his review of House's medical files. Dr. Otto opined that House could lift 20 pounds occasionally and 10 pounds frequently, with no restrictions on pushing or pulling. He also stated that House could sit, stand, and walk for about six hours in an eight hour workday, with normal breaks. He opined that House could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but only occasionally climb ladders, ropes, or scaffolds. Dr. Otto noted no environmental limitations. In conclusion, he stated that House has symptoms of fibromyalgia but the severity of her symptoms appear disproportionate to expected severity. (Tr. 512–19.)

### 4. Dr. Michael Fairfax

On March 14, 2008, Dr. Michael Fairfax, House's treating rheumatologist, completed a "Fibromyalgia Residual Functional Capacity (RFC) Questionnaire." On that questionnaire, Dr. Fairfax opined that House suffers from moderately severe pain and fatigue (with "moderately severe" defined as "seriously affects ability to function"). The questionnaire then asked how often House experiences "pain and/or fatigue sufficiently severe to interfere with attention and concentration," with the answer options being "never," "seldom," "often," "frequently," and "constantly." Dr. Fairfax checked

"frequently." He then checked "often" when asked, "To what degree does your patient experience deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)?" Dr. Fairfax concluded that House would not "be able to sustain work on a regular and continuing basis (8 hours a day, 5 days per week)." (Tr. 586–88.)

### 5.     Dr. Thomas Disney

On July 25, 2008, a state agency consulting physician, Dr. Thomas Disney, submitted a "Physical Residual Functional Capacity Assessment" based on his review of House's medical files. Dr. Disney opined that House could lift 20 pounds occasionally and 10 pounds frequently, with no restrictions on pushing or pulling. He also stated that House could stand and walk for two hours in an eight hour workday, with normal breaks, and that she can sit for about six hours in an eight hour workday. He opined that House could frequently balance, stoop, kneel, crouch, and crawl, but that she should only occasionally climb ramps or stairs, and that she should never climb ladders, ropes, and scaffolds. Dr. Disney also noted limitations in handling and fingering, which he restricted to "frequently,"[2] and he recommended avoiding concentrated exposure to temperature extremes, wetness, vibration, fumes, odors, dust, gasses and poor ventilation. In explaining his opinions, Dr. Disney stated that Dr. Fairfax's assessment was "too restrictive," and that "medical objective data do not entirely support [House's] allegations." (Tr. 635–42.)

### B.     The ALJ Hearing

#### 1.     House's Testimony Regarding Her Symptoms

At the ALJ hearing, House's testimony was largely directed at establishing the onset date of her conditions and their severity. House testified that, for the previous five years, she had experienced chronic pain in her upper arms, hands, shoulder blades, knees,

---

[2] "Restricted to 'frequently'" appears to be a *non sequitur*. The record contains no further explanation.

- 4 -

and hips. The pain in her hands prevents her from opening bottles, operating turn-style lamp switches, and wearing clothes with buttons. The pain in her shoulder blades, hips, and knees prevents sustained household activity. For example, doing the dishes or sweeping wears her out within five minutes and she must then take muscle-recovery breaks.

House also reported ongoing pain and discomfort from her intestinal difficulties, and those difficulties limit the types and amounts of medication she can take for any reason. The medications she can take make her feel groggy. House says that both her medications and her pain require her to rest frequently during the day — often up to four hours in a typical eight hour workday. House can drive, but does so as little as possible because of her medications.

House testified that she can stand for 10–15 minutes before needing to sit, and she can sit for about 20 minutes before needing to readjust. She can walk only about the length of a city block before needing to rest. She claimed that she could lift and carry no more than 10 pounds at a time — she has difficulty, for example, taking a sack of potatoes from the car into the house.

### 2. Vocational Expert Testimony

The ALJ posed the following hypothetical to the vocational expert, tracking Dr. Disney's assessment of House:

> I would ask you to consider a hypothetical person the same age, education and work history as Ms. House . . . if this hypothetical person could frequently lift and carry 10 pounds, occasionally 20 pounds, could stand and/or walk with normal breaks at least two out of eight hours, sit with normal breaks about six out of eight hours with normal breaks, no limits in pushing or pulling other than the weight restrictions which I just gave you, posturally could never climb ladders, ropes or scaffolds, occasionally can climb ramps and stairs, can frequently balance, stoop, kneel, crouch and crawl. Bilateral handling and fingering is restricted to frequent. Environmentally, this person needs to avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, fumes, odors, dust, gasses, poor ventilation, and avoid even moderate exposure to hazards.

- 5 -

(Tr. 53.) The vocational expert responded that such a person could work as a receptionist, general office clerk, and check cashier. The expert affirmed that sufficient numbers of such jobs exist both locally and in the national economy. The ALJ did not ask any other hypotheticals, but instead stated that there would be no work for House if she gave full credit to Dr. Fairfax's opinion or House's own testimony.

### C. The ALJ's Decision

The ALJ concluded that House has not worked since September 20, 2002, and that she suffers from "the following severe impairments: fibromyalgia, lumbar spine degenerative disc disease; osteoarthritis of the hands, mild; and diverticulitis." (Tr. 19 (citations omitted).) The ALJ did not determine the onset date of these impairments.

Because House's impairments do not meet or equal the Social Security Administration's listed impairments, the ALJ went on to assess House's residual functional capacity. This assessment again matches Dr. Disney's assessment, although in slightly summarized form:

> [T]he claimant has the residual functional capacity to stand and walk for 2 hours at a time for a total of at least 2 hours in an 8-hour day. The claimant can sit for 2 hours at a time and 6 hours in an 8-hour day. The claimant can occasionally lift and carry 20 pounds, frequently 10 pounds except the claimant should avoid climbing ladders, ropes and scaffolds but can occasionally climb ramps and stairs with frequent rest and avoid concentrated exposure to cold, heat, vibrations, fumes and hazards . . . .

(Tr. 20.) Recognizing that this conclusion conflicts with House's testimony about her symptoms, the ALJ explained that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 20.)

The ALJ then summarized PA Lewis's evaluation, Dr. Nadir's evaluation, Dr. Otto's evaluation, Dr. Disney's evaluation, and Dr. Fairfax's evaluation. In the process of summarizing, the ALJ did not say whether she credited or discredited any of

these opinions. The beginning sentence of the paragraph in which the ALJ summarizes Dr. Fairfax's opinion says, "The evidence shows that claimant's subjective complaints are disproportionate to objective findings." (Tr. 22.) But the remainder of the paragraph has no connection to this assertion. Rather, the summary of Dr. Fairfax's testimony points to an opposite conclusion.

The ALJ also summarized a few treatment records, one of which showed good responses to medication and others of which corroborated House's claim of persistent, limiting pain. The ALJ again said nothing about the weight that she gave to this evidence.

At one point, the ALJ noted that House "is able to do all of the housework, although she stated in small increments. . . . Despite using opiods [*sic*], she is alert enough to drive and does not complain to her doctors that treatment is ineffective or that she has disruptive medication side effects." (Tr. 22.) Then, in the final paragraph of the residual functional capacity explanation, the ALJ commented on the weight she gave to certain medical opinions:

> As for the opinion evidence, the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled.' Although those physicians were non-examining [*i.e.*, Dr. Otto and Dr. Disney], and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist [*sic*] a number of other reasons to reach similar conclusions (as explained throughout this decision).

(Tr. 23.)

The ALJ then went on to accept the vocational expert's conclusion that someone with House's residual functional capacity could work as a receptionist, general office clerk, and cashier. Thus, the ALJ concluded that House is not disabled.

## II. ANALYSIS

### A. General Standard of Review

The Court will uphold the ALJ's final decision if it is supported by substantial evidence and not based on legal error. *See* 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The substantial evidence standard requires the evidence, as a whole, to be "more than a mere scintilla but not necessarily a preponderance" and otherwise sufficient such that "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Tomassetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks omitted). Further, if the "evidence is susceptible to more than one rational interpretation" and the ALJ's decision is supported by one such rational interpretation, the Court will affirm the ALJ. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The Court will review only the issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 235 F.3d 503, 517 n.13 (9th Cir. 2001). The Court will not reverse for harmless error, which exists "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tomassetti*, 533 F.3d at 1038 (internal quotation marks omitted). However, the Court will "review the ALJ's decision based [only] on the reasoning and factual findings offered by the ALJ." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009). The Court will not "attempt to intuit what the adjudicator may have been thinking." *Id*.

### B. Weight of Medical Testimony

#### 1. Legal Standard for Weighing Medical Testimony

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, such as Dr. Fairfax, who actually treat the claimant; (2) examining physicians, such as Dr. Nadir, who examine but do not treat the claimant; and (3) non-examining physicians, such as Drs. Disney and Otto, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion

of a treating physician than to the opinions of non-treating physicians. *Id*. A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Moreover, the ALJ must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id*. at 832–33.

An examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id*. at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id*. at 830–31. The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id*. at 831.

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. The opinion of any physician, including a treating physician, need not be accepted, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009). But Social Security regulations expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631–32 (quoting Social Security Ruling 96-2p).

### 2. The ALJ's Treatment of Medical Testimony

By adopting Dr. Disney's evaluation, the ALJ gave greatest weight to a non-examining physician, despite the presence of Dr. Fairfax's treating physician opinion. The ALJ must therefore have expressed specific and legitimate reasons for discrediting Dr. Fairfax. The ALJ's decision fails this standard. The ALJ's sole explanation regarding the weight of medical testimony is her statement that Dr. Disney's and Dr. Otto's opinions "deserve some weight, particularly in a case like this in which there exist [*sic*] a number of other reasons to reach similar conclusions (as explained throughout this decision)." (Tr. 23.) But deciding to give non-examining physicians' opinions "some weight" says nothing about the weight given to the treating physician, nor does it specifically and legitimately explain why the non-examining physicians received greater weight than the treating physician. This alone is error. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) ("We hold that the ALJ erred because he neither explicitly rejected the [treating physician's opinion], nor set forth specific, legitimate reasons for crediting [the non-examining physician] over [the treating physician].").

To the extent the ALJ meant to rely on the "other reasons . . . explained throughout th[e] decision," it is not apparent what those "other reasons" are. The ALJ

spends the bulk of her analysis summarizing evidence without weighing it or otherwise developing it from raw facts into inferences and reasons.  The only statements that appear to come close to "reasons" are the following:

First,

> [o]n January 14, 2008, Dr. Fairfax noted the claimant was stable on her treatment regimen for the chronic pain related to fibromyalgia and lumbar spondylosis with overuse syndrome of the upper extremities, which waxes and wanes.  Upon examination she reported that she was doing well on her current regimen.  She has had no adverse side effects.

(Tr. 21 (citation omitted).)  This is, at best, a scintilla of evidence — a single treatment record in isolation from all others.  If the ALJ meant this as an "other reason," it does not rise to a "specific and legitimate" reason sufficient to place a non-examining physician's opinion ahead of a treating physician's opinion.

Second, the ALJ said that House "is able to do all of the housework, although she stated in small increments. . . .  Despite using opiods [*sic*], she is alert enough to drive and does not complain to her doctors that treatment is ineffective or that she has disruptive medication side effects."  (Tr. 22.)  This statement is partly inaccurate and otherwise irrelevant.  House's ability to do housework for a few minutes at a time, followed by rest periods, has no rational connection to her ability to perform substantial gainful activity.  Further, House specifically testified that she rarely drives because of her "opioid" medications.  Finally, the assertion that House "does not complain to her doctors that treatment is ineffective or that she has disruptive medication side effects" appears unsupported by anything in the record save for the single treatment note discussed in the preceding paragraph.  The remainder of the record shows frequent complaints about ineffective or barely effective treatments as well as side effects from medication.  Accordingly, the ALJ did not offer sufficiently specific and legitimate reasons for giving more credit to Dr. Disney's opinion than Dr. Fairfax's opinion.

The ALJ's error in this regard is not harmless because the ALJ stated that there would be no work for House if Dr. Fairfax's opinion was fully credited.  Accordingly, the

- 11 -

Court will vacate and remand for further explanation of the weight given to the various medical opinions.

### 3. House's Subjective Symptom Testimony

"[A] claimant who alleges disability based on subjective symptoms" — such as House's pain and fatigue — "need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Smolen*, 80 F.3d at 1281–82. Instead, she must (a) "produce objective medical evidence of an impairment or impairments" and (b) "show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of [the subjective] symptom." *Id*.

Every medical opinion available to the ALJ confirmed that House had met these two elements. Given this, the ALJ could not reject House's testimony about the limiting effects of her pain and fatigue without "mak[ing] specific findings stating clear and convincing reasons for doing so. The ALJ [was required to] state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Id*. at 1284 (citation omitted); *see also Morgan v. Comm'r of SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."). The ALJ could derive such credibility conclusions from, for example,

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen*, 80 F.3d at 1284.

Here, the ALJ looked at House's daily activities and concluded that her ability to do housework "in small increments" and her ability to drive "[d]espite using opio[i]ds" cut against her credibility. But as explained above, the ALJ mischaracterized House's testimony on these subjects. Thus, the ALJ has not made specific findings stating clear and convincing reasons for disbelieving House. Again, this error is not harmless because

the ALJ stated that there would be no work for House if House's testimony was fully credited. The Court will therefore vacate and remand for further explanation of the weight given to House's subjective symptom testimony.

### C.     House's Credit-as-True Request

Rather than remanding for further explanation, House asks this Court to order the ALJ to credit House's testimony as true and therefore remand with directions to award benefits. But credit-as-true applies only "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's [subjective symptom] testimony were credited." *Varney v. Sec'y of HHS*, 859 F.2d 1396, 1401 (9th Cir. 1988). That is not this case here. Accordingly, a credit-as-true order is not warranted.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is VACATED and REMANDED for further explanation of (i) the weight given to the various medical opinions, and (ii) the weight given to House's subjective symptom testimony.

IT IS FURTHER ORDERED that the Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 9th day of November, 2011.

_____
Neil V. Wake
United States District Judge